UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| MARSHA ADGER, | ) | |
|---|---|---|
| | ) | Case No. 18 C 7967 |
| Plaintiff, | ) | |
| | ) | District Judge Joan H. Lefkow |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| R&L MANAGEMENT CO., INC., | ) | |
| LILI MCDONALD, THOMAS HESTER, | ) | |
| and RICHARD BARR, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

Plaintiff Marsha Adger, by her counsel, has moved to withdraw from a scheduled settlement conference and to "proceed with discovery" ("the Motion," D.E. 26) in this matter in which she alleges employment discrimination. The Court dismisses the Motion as moot, having determined that at this time, a settlement conference will not be fruitful and having vacated the conference on the Court's own motion. The Court files this Memorandum Opinion to offer some additional comments about the Motion, the need to abide by Court orders, and the need for counsel to be courteous to each other and to the Court when it comes to matters of scheduling.

### Background

Although discovery never was stayed in this matter, on May 2, 2019, the Court scheduled a settlement conference at the Parties' request.[1] In connection with scheduling the settlement conference for June 14, the Court entered an order on May 2 providing in relevant part: "Parties are to exchange position letters prior to the settlement conference. *Plaintiff shall provide*

---

[1] The Court's order was entered by U.S. Magistrate Judge Rowland. On May 31, 2019, this matter was reassigned to the undersigned U.S. magistrate judge.

*Defendants with a demand letter by 5/24/19."* (D.E. 25) (emphasis added). But Plaintiff never provided Defendants with her demand letter. In the meantime, Plaintiff and Defendants became involved in a discovery dispute about what discovery each could or should pursue with the settlement conference pending. On May 30, Plaintiff filed the Motion to pull out of the settlement conference, arguing that Defendants' pursuit of written discovery responses and certain third-party discovery was unfair in light of the agreement to mediate. The Motion made no mention of Plaintiff's not having complied with the Court's May 2 Order. At no time before May 30 did Plaintiff seek any relief from that Order, and the Motion she filed on May 30 does not explicitly seek relief from the Order's directive that she provide Defendants with a demand letter. A request for that specific form of relief from the Order arguably is implicit in the Motion's request to withdraw from the settlement conference.

The Court will not take the time to walk through the particulars of the discovery dispute that apparently triggered the Motion. However, the exhibits submitted by Defendants, and not disputed by Plaintiff, show that after the May 2 Order setting the settlement conference for June 14, Plaintiff's lead counsel, Luke A. Casson, sent an email to defense counsel committing to provide responses to Defendants' written discovery requests by May 9. In addition, on May 3, one day after the Order, defense counsel emailed Mr. Casson, seeking a HIPAA release that would permit Defendants to subpoena a hospital for Plaintiff's medical records, so that Defendants could have them in advance of the June 14 settlement conference. The record does not indicate that Plaintiff, by Mr. Casson, ever responded to the request for the HIPAA release, although in the Motion, Plaintiff objected to Defendants' pursuit of the hospital records by third-party subpoena while Plaintiff had agreed to postpone the taking of three depositions. The Court is not weighing in on whether Plaintiff ought to be permitted to take those depositions or whether they were

necessary before the settlement conference. But the record does establish that Defendants' interest – for purposes of the settlement conference – in Plaintiff's written discovery responses, and in the third-party medical record discovery, was known to Mr. Casson as early as May 3.

Yet Mr. Casson did not complain about this discovery, or assert to Defendants that they ought not to obtain it before the settlement conference, until he signed and filed the Motion on May 30 calling for the settlement conference to be cancelled due to the unfair disadvantage purportedly imposed on him and his client by the state of discovery.

For their part, Defendants responded to the Motion on June 3. They asserted that they had not treated Mr. Casson or his client unfairly. (D.E. 29.) They recited, with exhibits, the history of their communications with Mr. Casson since May 2, including his statement that written discovery responses would be provided and Defendants' multiple requests for the HIPAA waiver so they could subpoena the medical records. (*Id.*) But they opposed Plaintiff's request to withdraw from the settlement conference and asked the Court to compel her to appear at the settlement conference so it could proceed as scheduled on June 14. (*Id.*)

At the hearing, Plaintiff's counsel presented and argued the Motion, but Mr. Casson did not appear. Instead, he sent a junior lawyer who argued the Motion gallantly and behaved with integrity, although she did not know the answer to the Court's question of why Plaintiff and/or her counsel failed to comply with the May 2 Order directing the transmittal of a settlement demand by May 24, or why no effort was made to seek timely relief from that aspect of the Order.

### Discussion

First, if Plaintiff is unwilling to appear at a settlement conference, the Court is in no position to force her to do so. All parties to a dispute must want to pursue the settlement avenue in order for a mediation to be successful. And aside from Plaintiff's noncompliance with the Court's May

2 Order, if she will not or cannot articulate a written settlement proposal stating her damages, itemizing them, and setting forth an opening monetary position, the matter simply is not ready for mediation. Perhaps it will be ready at some point in the future. But because it is not ready now, or because, more specifically, Plaintiff is not quite ready to mediate, there is no point in conducting a settlement conference, and the Court is vacating the June 14 conference on its own motion. The Court therefore dismisses the Motion as moot.

Second, the Court has some concerns about how the Motion came about and how it was litigated, and the Court wants to take this opportunity to draw the Parties' attention to a few simple points.

As a preliminary matter, the Court does not view Plaintiff's or her counsel's disregard of the May 2 Order's directive (concerning the transmittal of a settlement demand by May 24) as contemptuous or as sufficiently disruptive to the tribunal to raise a professional responsibility problem under Illinois Rule of Professional Responsibility 3.5(d), particularly where the reassignment of this matter coincided with this dispute and with the rescheduling or postponement of other hearings and conferences. But Plaintiff's noncompliance with the May 2 Order warrants a strong reminder, to all, that orders entered by the Court are important and should not be disregarded or taken lightly. At the May 2 hearing before U.S. Magistrate Judge Rowland, defense counsel offered her insurer representative's available dates for June, and there were only four of them. (5/2/19 Tr. at 4.) The Parties chose June 14, and the Court placed that date on its calendar for the settlement conference. (*Id.*)

Shortly after reassignment of this matter, the Court attempted to address the issue of previously scheduled settlement conferences in multiple matters, with a view toward avoiding postponing any of them, wherever possible, as a courtesy to the litigants and their counsel. The

Court had decided not to postpone the June 14 conference in this matter, while considering the schedules of litigants, their counsel, and the Court with respect to other matters. The Court then became aware of the Motion.

At the June 4 hearing on the Motion, defense counsel confirmed, in response to the Court's question, that the insurer's representatives had booked air travel in anticipation of the June 14. We did not discuss whether anyone will be out of pocket for non-refundable tickets as a result of the cancellation of the conference, but as anyone knows, having to cancel a trip after booking air travel and clearing one's calendar is an inconvenience in business. Subjecting Defendants, their representatives, their counsel and the Court to a sudden and unexpected change of course such as the one that occurred here may not have been contemptuous or intended to disrupt a tribunal under the circumstances here, but it was, at the very least, discourteous, given that the purported reasons for the change of heart should have been evident to Mr. Casson as of May 3. Sanctions may very well need to be imposed if this conduct repeats itself in the future.

The Seventh Circuit's Standards for Professional Conduct are not a basis for any penalty or sanction, but they provide lawyers and judges with a helpful guidepost. The Preamble provides that "[a] lawyer's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms." Duty 1 of Lawyers' Duties to Other Counsel reiterates that "[w]e will treat all other counsel, parties, and witnesses in a civil and courteous manner . . . ." Duty 3 of Lawyers' Duties to the Court provides that "[w]e will be considerate of the time constraints and pressures on the court and the court staff inherent in their efforts to administer justice."

The Court urges all counsel, and in particular Mr. Casson, to review carefully the Seventh Circuit's Standards for Professional Conduct, as the Preamble states that the Standards "should be

5

reviewed and followed by all judges and lawyers participating in any proceeding, in this Circuit." The Court makes no adverse comment or criticism here on the professional conduct of any counsel in this matter, including Mr. Casson. Instead, the Court wishes to remind counsel that we all live here in the world of federal practice in this Circuit, and the Standards teach us much about how we should treat each other, as human beings as well as lawyers and judges.

Finally, the Court is ordering Mr. Casson to appear at the next scheduled status hearing on June 12, 2019. Appearing in person will give Mr. Casson an opportunity to address the noncompliance with the Court's May 2 Order and the failure to seek timely relief from that Order, because once again, Court orders should not be disregarded. The Court also wishes to re-examine the possibility that a settlement conference might be fruitful, so long as the Parties are prepared to engage in one.

Moreover, as the Court expressed to counsel present at the June 4 hearing on the Motion, the Court was disturbed by the fact that Mr. Casson sent his junior lawyer to appear at the Motion hearing, and did not appear himself, under these particular circumstances. The May 2019 chain of email communication submitted to the Court on this Motion was between defense counsel and Mr. Casson, not his associate. Mr. Casson's motion, which he signed, was an unusual one, in that it raised the question of why an order of this Court was disregarded. Mr. Casson apparently did not prepare his associate to answer that question. Senior lawyers should be giving associates meaningful professional experiences, including those that involve appearances before courts. The Court welcomes the participation of junior lawyers in court appearances and all aspects of litigation and settlement of a case, but in a way that is fair to them and provides them with the training and experience they need to develop as professionals. Where a lawyer's conduct raises

obvious questions as weighty as why a Court order was ignored, that lawyer should appear before the Court to answer those questions.

## Conclusion

For the foregoing reasons, the June 14 settlement conference is vacated, the Motion is denied as moot, and the Court has scheduled at June 12 status conference at which Mr. Casson is directed to appear.

**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: June 17, 2019**